UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-24382-BLOOM/Sanchez

TUUCI WORLDWIDE, LLC,

    Plaintiff,
v.

OUTER, INC.,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS COUNTERCLAIMS**

**THIS CAUSE** is before the Court upon Plaintiff Tuuci Worldwide, LLC's Motion to Dismiss Defendant's Counterclaims, ECF No. [27] ("Motion"). Defendant Outer, Inc. filed a Response, ECF No. [30], to which Plaintiff filed a Reply, ECF No. [32]. The Court has carefully considered the Motion, the Response, the Reply, the applicable law, and the record. For the reasons discussed below, the Motion is granted in part and denied in part.

**I.  BACKGROUND**

Plaintiff is a manufacturer and distributor of large, outdoor, high-end patio umbrellas. *See* ECF No. [1] ("Compl.") ¶ 1. Plaintiff alleges Defendant, a competing umbrella manufacturer and distributor, has "committed acts of infringement and unfair competition as part of a calculated effort to copy [Plaintiff's] valuable intellectual property." *Id.* ¶ 3; *see also id.* ¶ 43. Specifically, Plaintiff alleges Defendant's Marine-Grade Aluminum Outdoor Umbrella and corresponding Marine-Grade Aluminum Outdoor Umbrella Hub Design are copies of Plaintiff's unique umbrella trade dress and signature hub cover trade dress, and according to Plaintiff, the copies are intended to "divert customers who would have otherwise purchased Plaintiff's products." *Id.* ¶¶ 45-46.

Plaintiff asserts four counts against Defendant: Federal Trade Dress Infringement (Count I); Federal Unfair Competition, False Description, and False Designation of Origin Under the Lanham Act (Count II); Florida Common Law Trade Dress Infringement (Count III); and Florida Common Law Unfair Competition (Count IV). *See generally* Compl.

In Defendant's Answer, ECF No. [20] ("Ans."), it asserts twenty-three affirmative defenses and eight counterclaims. *See generally* Ans. The first and second counterclaims seek a declaratory judgment that Defendant has not committed trade dress infringement, and that Plaintiff has no rights in the asserted trade dresses. *See id.* at 32-33. Through the third counterclaim, Defendant seeks a declaratory judgment that Plaintiff's claims are barred by the doctrines of waiver, estoppel, laches, and acquiescence. *See id.* at 34. Defendant's fourth counterclaim alleges Plaintiff has engaged in unfair competition under the Lanham Act. *See id.* at 34-35. Defendant's fifth counterclaim seeks a declaratory judgment that Plaintiff's conduct constitutes patent misuse, *see id.* at 35-36, and its sixth counterclaim seeks damages and injunctive relief for Plaintiff's alleged anticompetition under the Sherman Act, 15 U.S.C. § 2, *see id.* at 36-38. Defendant's seventh and eighth counterclaims assert claims for relief arising under Florida law—one under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201, *et seq.*, and one for Florida common law unfair competition. *See id.* at 39-40.

In the Motion, Plaintiff seeks dismissal of all eight counterclaims with prejudice, arguing (1) the first and second counterclaims are duplicative of Defendant's affirmative defenses and denials; (2) the third counterclaim asserts affirmative defenses—not causes of action—that are insufficiently pled; (3) the fifth counterclaim asserts an affirmative defense to patent infringement,

not a counterclaim; (4) the *Noerr-Pennington* doctrine of immunity bars the fourth and sixth counterclaims; and (5) Defendant fails to state a false advertising claim. *See generally* Mot.[1]

## II.  LEGAL STANDARD

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (quoting *Great Am. Assur. Co. v. Sanchuk, LLC*, No. 8:10–cv–2568–T–33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Indeed, a pleading in any civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although these standards do not require detailed factual allegations, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[O]nly a [counterclaim] that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). To satisfy this "plausibility standard," a counter plaintiff must "plead[] factual content that allows the court to draw the

---

[1]  Plaintiff separately filed the instant Motion and its Motion to Strike, ECF No. [28], on the same day. Defendant urges that Plaintiff's "duplicative Rule 12 motions should be rejected out of hand as procedurally improper under the Federal Rules." Resp. 3.
  Federal Rule of Civil Procedure 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." A motion to dismiss and a motion to strike are certainly types of Rule 12 motions, *see id.* at 12(b), (f), and Plaintiff does not contend that a Rule 12(h)(2) or (3) exception applies. Thus, Plaintiff was required to combine both motions into one filing. However, Plaintiff's failure to do so does not warrant denial of the instant Motion because Plaintiff promptly filed a Notice of Withdrawal of its Motion to Strike, ECF No. [33].

reasonable inference that the [counter] defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, the court construes the complaint in the light most favorable to the counter plaintiff and takes the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997). "The motion may be granted only if, viewing the pleaded facts in the light most favorable to the counter-claimant, no set of facts in support of the claim would entitle [the] counter-claimant[] to relief." *Fabricant v. Sears Roebuck*, 202 F.R.D. 306, 308 (S.D. Fla. 2001). On a Rule 12(b)(6) motion, the movant bears the burden of showing entitlement to dismissal. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency.").

## III. DISCUSSION

### a. First and Second Counterclaims for Declaratory Judgment

Defendant's first and second counterclaims seek declaratory judgments regarding (1) Defendant's non-infringement of Plaintiff's trade dress rights and (2) the nonexistence and invalidity of Plaintiff's asserted trade dress rights. *See* Ans. 32-33. Plaintiff moves to dismiss both counterclaims, arguing the Court should decline to exercise declaratory judgment jurisdiction because the counterclaims are duplicative of Defendant's affirmative defenses and denials. *See* Mot. 2-4.[2] Defendant responds that a counterclaim raising similar issues as an affirmative defense is not automatically "superfluous." Resp. 4–5. And regardless, Defendant argues, "redundancy

---

[2] Plaintiff points to specific affirmative defenses raised in the Answer:

> For example, in its first affirmative defense, Defendant asserts that the asserted trade dress is functional and unprotectable, i.e., that [Plaintiff] has no rights. In its twentieth affirmative defense, Defendant asserts that [Plaintiff]'s trade dress is generic or descriptive without secondary meaning, i.e., that [Plaintiff] has no rights. Defendant has also denied all of [Plaintiff]'s counts for infringement. The counterclaims are superfluous . . . .

Mot. 2; *see also* Ans. 8–11, 18.

4

alone does not warrant dismissal." *Id.* at 5. The Court agrees with Plaintiff, though not solely on the ground of redundancy.

"Declaratory relief is a procedural device [that] depends on an underlying substantive cause of action and cannot stand on its own." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1195 (S.D. Fla. 2021), *aff'd,* No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022); *see also Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-CIV, 2010 WL 376309, at *8 (S.D. Fla. Jan. 26, 2010) (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("[D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated.")); *Jolibois v. Fla. Int'l Univ. Bd. of Trustees*, 654 F. App'x 461, 466 (11th Cir. 2016) ("The Declaratory Judgment Act is procedural in operation and does not confer independent jurisdiction upon this Court."); *Zolin v. Caruth*, No. 3:09-cv-38-WS, 2009 WL 2982907, at *7 (N.D. Fla. Sept. 14, 2009) ("[T]he Declaratory Judgment Act does not establish an independent cause of action, it is procedural only and merely establishes a legal remedy available in cases brought pursuant to some other law."). Accordingly, the relevant inquiry is not whether the counterclaims are redundant but whether they rest on an underlying substantive cause of action that would independently support relief. Here, they do not.

Both counterclaims appear to be standalone claims for declaratory relief unsupported by any independent substantive cause of action. *See* Ans. 32-33. Thus, because the Declaratory Judgment Act is merely procedural and establishes no independent cause of action on its own, the Court declines to exercise jurisdiction over either counterclaim. *See Arencibia*, 533 F. Supp. 3d at 1195 (dismissing claim for declaratory relief because declaratory relief claim could not stand on its own). The first and second counterclaims are dismissed.

### b. Third Counterclaim: Waiver, Estoppel, Laches, and Acquiescence

In its third counterclaim, Defendant seeks a declaratory judgment that Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel, laches, and acquiescence. *See* Ans. 34. Plaintiff moves for dismissal, arguing (1) these doctrines are affirmative defenses improperly cast as a counterclaim for relief, (2) the counterclaim is redundant in light of Defendant's affirmative defenses,[3] and (3) in any event, the counterclaim is insufficiently pled because Defendant fails to allege facts establishing the elements of each equitable defense. *See* Mot. 4–5. Defendant responds that its third counterclaim asserts "a right to relief under the Declaratory Judgment Act—specifically, a judicial declaration that [Plaintiff] is barred by equitable doctrines from asserting trade dress rights against [Defendant]. The equitable doctrines themselves . . . supply the basis for relief, not standalone claims in their own right." Resp. 8.[4]

An affirmative defense "attacks [a] plaintiff's legal right to bring an action," whereas a counterclaim asserts a right to relief. *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1264 (11th Cir. 1999). Courts have discretion to dismiss redundant counterclaims. *See Pearson Educ., Inc v. Hotfile Corp.*, No. 14-CIV-20200, 2015 WL 11216708, at *3 (S.D. Fla. Jan. 27, 2015) ("Defendants correctly acknowledge that the Court's ability to dismiss these redundant claims is

---

[3] Relevant here, Defendant's sixth affirmative defense asserts:

Plaintiff's claims are barred by the doctrines of *waiver*, *laches*, ratification, *acquiescence*, *estoppel*, and consent as Defendant has openly and obviously offered the Marine-Grade Aluminum Outdoor Umbrella in commerce for several years and Plaintiff has knowingly stood by and failed to enforce any of its supposed trade dress or other rights against Defendant.

Ans. 15 (emphasis added).

[4] The Court notes that Defendant did not specifically respond to Plaintiff's argument that the third counterclaim is redundant in light of Defendant's affirmative defenses. Generally, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

within its discretion."); *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) ("Even if the counterclaim were wholly redundant, this Court may exercise its discretion by not dismissing the counterclaim."). In deciding whether to do so, courts consider whether the counterclaim serves a useful purpose. *U.S. ex rel. BAC Funding Consortium, Inc. v. Westchester Fire Ins. Co.*, No. 13–22536–CIV, 2014 WL 186125, at *5 (S.D. Fla. Jan. 16, 2014) (citing *Medmarc*, 783 F. Supp. 2d at 1217).

In *Pearson*, the defendant asserted counterclaims seeking a declaratory judgment based on equitable doctrines that mirrored its affirmative defenses. 2015 WL 11216708, at *1. This Court dismissed those counterclaims, finding they raised factual and substantive issues that would necessarily be decided in resolving the claims and affirmative defenses already raised by the parties. *Id.* at *3. For that reason, there remained no favorable reason or useful purpose to retain the redundant counterclaims. *Id.* The Court emphasized that the claims were not standalone claims and would not present an actual controversy if the plaintiffs later dismissed their claims. *See id.*; *see also BAC Funding*, 2014 WL 186125, at *5 ("Because the resolution of BAC's claims and ACE's defenses thereto would resolve the questions raised in ACE's counterclaim, the Court finds that the counterclaim for declaratory judgment serves no useful purpose. . . . Accordingly, the Court will exercise its discretion to dismiss ACE's counterclaim." (citations omitted)); *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, No. 13–60154–CIV, 2013 WL 4543796, at *5 (S.D. Fla. Aug. 27, 2013) (exercising discretion in dismissing redundant counterclaim).

The same is true here. Defendant's third counterclaim seeks a declaratory judgment that Plaintiff's claims are barred by waiver, estoppel, laches, and acquiescence—the same issues Defendant raises in its sixth affirmative defense. *See* Ans. 15, 34. Resolving Plaintiff's claims and Defendant's defenses will necessarily require a determination as to whether any of these equitable

doctrines apply. Therefore, the counterclaim would not present an actual controversy should Plaintiff dismiss its claims against Defendant, nor would its resolution clarify the parties' legal relations beyond what already will be determined in this litigation. *See Pearson*, 2015 WL 11216708, at *3. Finding no favorable reason or useful purpose to retain Defendant's third counterclaim, the Court exercises its discretion to dismiss it as redundant. *See id.*; *BAC Funding*, 2014 WL 186125, at *5; *It's a 10*, 2013 WL 4543796, at *5.[5]

### c. Fifth Counterclaim for Declaratory Relief (Patent Misuse)[6]

Defendant's fifth counterclaim is likewise defective. Defendant seeks a declaratory judgment that Plaintiff's conduct "constitutes patent misuse, rendering its trade dress and any related [intellectual property] rights unenforceable unless and until the misuse is purged." Ans. 36. Plaintiff seeks dismissal, arguing "[p]atent [m]isuse is an affirmative defense to patent infringement, not a counterclaim to an allegation of trade dress infringement." Mot. 6 (citing *Ameritox, Ltd. v. Aegis Servis. Corp.*, No. 07-80498-CIV-MARRA, 2008 WL 2705435, at *6 (S.D. Fla. July 9, 2008), *modified on reconsideration*, No. 07-80498-CIV, 2009 WL 10668614 (S.D. Fla. May 13, 2009)). Plaintiff further points out it has not alleged patent infringement, rendering a patent misuse defense inappropriate regardless of its procedural posture. *See* Mot. 6.

Plaintiff's reliance on *Ameritox* is persuasive. There, plaintiffs moved for dismissal of a defendant's counterclaim for patent misuse, and the court made clear that "patent misuse is an affirmative defense to the accusation of patent infringement." *Ameritox*, 2008 WL 2705435, at *6

---

[5] Although redundancy is a sufficient basis for dismissal of the third counterclaim, the Court further notes that, regardless of the procedural mechanism through which these equitable doctrines were raised, the third counterclaim is insufficiently pled. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. The allegations in support of Defendant's third counterclaim comprise only three numbered paragraphs containing insufficient facts to establish the elements of each equitable doctrine. *See* Ans. 34. Thus, the allegations are insufficient to meet the *Iqbal*/*Twombly* pleading standard.

[6] The Court's discussion of Defendant's fourth counterclaim appears below, in subsection 3(e).

(citing *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997)). Accordingly, the court dismissed the counterclaim, reasoning that "the proper mechanism to assert patent misuse is to plead it as an affirmative defense." *Id.*; *see also Virginia*, 133 F.3d at 868 ("Patent misuse is an affirmative defense to an accusation of patent infringement . . . .").

That reasoning applies with equal force here. The proper mechanism for Defendant to assert patent misuse is to plead it as an affirmative defense to a claim of patent infringement. *See Ameritox*, 2008 WL 2705435, at *6; *Virginia*, 133 F.3d at 868. However, Plaintiff has not alleged a patent infringement claim in this action, and absent such a claim, there exists no substantive basis for Defendant to assert patent misuse—whether as an affirmative defense or as a counterclaim. *See generally* Compl. Therefore, Defendant's fifth counterclaim shall be dismissed.

### d.  Sixth Counterclaim: Anticompetition Under Section 2 of the Sherman Act

Defendant alleges an anticompetition claim against Plaintiff under the Sherman Act, 15 U.S.C. § 2. *See* Ans. 36-38. Defendant seeks damages and injunctive relief based on Plaintiff's alleged "unlawful monopolization and attempted monopolization of the market for high-end outdoor umbrellas and related outdoor shade products." *Id.* at 36.

Defendant alleges that Plaintiff previously held utility patents covering structural and functional features of Plaintiff's outdoor umbrellas; many of these patents have now expired, "placing their disclosed functional features in the public domain." *Id.* at 37. According to Defendant, despite the expiration of Plaintiff's patents, Plaintiff "is now asserting trade dress rights over the same functional product features . . . without alleging any significant aesthetic distinctions from those described in its expired patents." *Id.* Thus, Defendant alleges, Plaintiff "is seeking ongoing market exclusivity through trade dress law." *Id.* at 38. "[Plaintiff's] enforcement tactics—including litigation threats, lawsuits, and public claims of exclusive design rights—have

9

had the effect of chilling competitive entry, increasing competitor costs, and deterring innovation and alternative designs." *Id.*

Seeking dismissal, Plaintiff contends that Defendant fails to state a cause of action because Defendant alleges no marketplace activities by Plaintiff that are outside the realm of pre-litigative and litigative actions. *See* Mot. 7. Beyond this pleading insufficiency, Plaintiff asserts that "*Noerr-Pennington* immunity precludes antitrust liability for resorting to litigation to obtain from a court an anticompetitive outcome." *Id.* Defendant responds that the counterclaim alleges "a broader course of anticompetitive actions that go beyond litigation conduct" and that the *Noerr-Pennington* doctrine is inapplicable because it does not immunize "sham enforcement efforts that are a pretext for improper attempts to hinder lawful competition." Resp. 13-14.

The First Amendment guarantees the right to "petition the [g]overnment for a redress of grievances." U.S. Const. amend. I. Rooted in the Petition Clause, the *Noerr-Pennington* doctrine provides that "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The doctrine initially emerged and most often is invoked in antitrust cases. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657 (1965); *see also Sosa*, 437 F.3d at 929 ("The *Noerr–Pennington* doctrine arose in the antitrust context and initially reflected the Supreme Court's effort to reconcile the Sherman Act with the First Amendment Petition Clause."). The Supreme Court, recognizing that the "right to petition extends to all departments of the [g]overnment," and that the right of access to the courts is an aspect of the right to petition, extended *Noerr-Pennington* immunity to immunize the use of "the channels and procedures of state and federal . . . courts" to advocate causes. *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510-11 (1972).

10

"*Noerr-Pennington* immunity thus shields a defendant from antitrust liability for resorting to litigation to obtain from a court an anticompetitive outcome." *Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1233 (11th Cir. 2005). This shield covers "pre-litigative and litigative activities," making it so that a complaint alleging only such activities "cannot state a cause of action." *Atico Int'l USA, Inc. v. LUV N' Care, Ltd.*, No. 09-60397-CIV-COHN, 2009 WL 2589148, at *2 (S.D. Fla. Aug. 19, 2009); *cf. B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 532 n.1 (9th Cir. 2022) ("The *Noerr–Pennington* doctrine . . . provides that litigation activity (including pre-litigation cease-and-desist letters) cannot form the basis of liability unless the litigation is a 'sham.'" (alterations added; citations omitted)).

Not all petitioning activity is immunized, however. An exception to the *Noerr-Pennington* doctrine exists where the defendant engages in "sham" litigation. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). Under the sham exception, activity "'ostensibly directed toward influencing governmental action' does not qualify for *Noerr* immunity if it 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor.'" *Prof'l Real Estate Inv'rs*, 508 U.S. at 51 (quoting *Noerr*, 365 U.S. at 144). This exception seeks to prevent the immunization of conduct that uses "governmental process . . . as an anticompetitive weapon." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009) (quoting *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)).

Defendant's sixth counterclaim alleges only pre-litigative and litigative activity. Specifically, Defendant alleges Plaintiff "is seeking ongoing market exclusivity through trade dress law[,]" and that Plaintiff's "enforcement tactics—including litigation threats, lawsuits, and public claims of exclusive design rights—have had the effect of chilling competitive entry, increasing competitor costs, and deterring innovation and alternative designs." Ans. 38. Defendant supports

its sixth counterclaim by alleging that Plaintiff asserted its rights, threatened litigation, and initiated litigation of its trade dress claims. *See id.* Defendant alleges no marketplace activities outside the realm of pre-litigative and litigative actions. *See* Mot. 7; *see also McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1560 (11th Cir. 1992) (holding that threatening litigation is a protected, pre-litigative activity and commencing litigation is a protected, litigative activity); *Atico*, 2009 WL 2589148, at *3 ("The filing of a suit is a litigative activity."). Thus, the counterclaim fails to state a cause of action. *See id.* at *2 (holding that "a complaint that alleges only pre-litigative and litigative activities cannot state a cause of action" under the Sherman Act); *cf. B&G Foods*, 29 F.4th at 532 n.1 ("The *Noerr–Pennington* doctrine. . . provides that litigation activity (including pre-litigation cease-and-desist letters) cannot form the basis of liability unless the litigation is a 'sham.'" (alterations added; citations omitted)). Accordingly, the *Noerr-Pennington* doctrine bars Defendant's sixth counterclaim so long as these pre-litigative and litigative activities were not a "sham." *See Prof'l Real Estate Inv'rs*, 508 U.S. at 51.

A party invoking the sham exception must establish that (1) "the lawsuit [is] objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) the party bringing the allegedly baseless suit did so with a "subjective motivation" to "interfere directly with the business relationships of a competitor." *Prof'l Real Estate Inv'rs*, 508 U.S. at 60–61 (quoting *Noerr*, 365 U.S. at 144). Thus, the burden falls on the party challenging immunity. *See McGuire Oil*, 958 F.2d at 1560. Only if challenged litigation is objectively meritless—meaning the first prong is satisfied—may a court examine the litigant's subjective motivation. *Prof'l Real Estate Inv'rs*, 508 U.S at 60. As such, "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." *Id.* at 57.

Defendant alleges Plaintiff's pre-litigative and litigative conduct "constitutes exclusionary and anticompetitive conduct designed to suppress competition and maintain its dominance in the relevant market." Ans. 38.  Referring to Plaintiff's alleged efforts to enforce expired patent rights, Defendant asserts that Plaintiff's conduct is "not based on any legitimate claim of source-identifying nonfunctional trade dress. Instead, it is an objectively baseless attempt to maintain control over product features that should now be freely available to competitors." *Id.*

A conclusory allegation that a lawsuit is objectively baseless is insufficient to survive a motion to dismiss. *See Atico*, 2009 WL 2589148, at *4; *Twombly*, 550 U.S. at 555; *Havoco of Am., Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir. 1983) ("[A] plaintiff must do more than merely allege that defendant's petitioning activity was a sham in order to overcome the First Amendment privilege."). In *Atico*, the plaintiff failed to meet its burden of showing that a New York lawsuit was sham litigation because the plaintiff's allegations focused mainly on the defendant's subjective intent and contained no information establishing that the lawsuit was objectively meritless. *See* 2009 WL 2589148, at *4. Instead, the plaintiff alleged in a conclusory manner that the lawsuit was baseless. *Id.* The court found the conclusory allegation insufficient and dismissed the claim on First Amendment grounds, reasoning that even if the allegations regarding the defendant's subjective intent were true, they would not render the New York suit a sham unless the New York suit was objectively meritless. *Id.*

Here, Defendant's allegation that Plaintiff's conduct "is an objectively baseless attempt to maintain control over product features that should now be freely available to competitors" is conclusory. Ans. 38. Defendant's claim focuses on Plaintiff asserting trade dress claims in this litigation and "in prior enforcement actions" in an apparent attempt to "continue excluding competitors from the market," but Defendant fails to allege sufficient facts for the Court to find

13

this litigation or those prior actions objectively meritless. *See* Ans. 37; *see also* Ans. 31 (identifying prior patent infringement lawsuits by Plaintiff against other entities). Thus, regardless of Plaintiff's subjective motivation, the sham exception cannot apply. *See Prof'l Real Estate Inv'rs*, 508 U.S at 57 ("[A]n objectively reasonable effort to litigate cannot be sham regardless of subjective intent."). Like in *Atico*, here, Defendant's conclusory allegation is insufficient to survive dismissal. 2009 WL 2589148, at *4. The sixth counterclaim is dismissed.

### a. Fourth Counterclaim: Unfair Competition under the Lanham Act

Defendant's fourth counterclaim alleges unfair competition under the Lanham Act. *See* Ans. 34-35. Defendant contends Plaintiff "has made, and continues to make, false or misleading representations of fact in commerce concerning the nature, origin, and exclusivity of certain features of its umbrella products." Ans. 34. Specifically, Plaintiff allegedly claimed—both publicly and in litigation—that various features of its umbrellas are "distinctive, proprietary, and non-functional" and that "competitors who adopt similar features are infringing [Plaintiff]'s rights or unlawfully 'copying] [Plaintiff]'s designs." *Id.* Defendant further alleges Plaintiff "has made such statements and allegations in *marketing, trade communications, litigation, and discussions with retailers and industry partners*." *Id.* at 35 (emphasis added). Plaintiff moves to dismiss the fourth counterclaim on the basis of immunity, arguing courts have extended the *Noerr-Pennington* doctrine's application to lawsuits brought outside the antitrust context and that the fourth counterclaim arises from statements Plaintiff made in litigation. Mot. 8.

Defendant's fourth counterclaim appears to allege conduct beyond litigative and pre-litigative activity. In support, Defendant alleges that Plaintiff made false or misleading statements "in marketing, trade communications, litigation, and discussions with retailers and industry partners." Ans. 35. Thus, unlike the allegations in support of Defendant's sixth counterclaim, these

allegations do not focus merely on Plaintiff's litigation activity. *See* Ans. 36-38. This broader factual focus takes the fourth counterclaim out of the reach of the *Noerr-Pennington* doctrine, as the alleged conduct is not the type of protected petitioning activity the doctrine is intended to immunize. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1137 n.8 (D.C. Cir. 2015) (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962)) ("[T]he doctrine does not apply to parties 'engaged in private commercial activity . . . .'"). And because Plaintiff sets forth no other sufficient basis for dismissal of the fourth counterclaim, the counterclaim survives dismissal.

### b. Seventh and Eighth Counterclaims: FDUTPA and Florida Unfair Competition

Defendant asserts its seventh counterclaim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq, and alleges Plaintiff has engaged in "unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices[.]" *Id.* at 39. Specifically, Plaintiff "continu[es] to advertise and promote to consumers that its [Ocean Master] product line is protected by patents when such patents have expired." *Id.* This conduct, according to Defendant, is "likely to deceive consumers into thinking that no other competitors may use a cylindrical hub cover and/or a dual-spoke cam cleat in its outdoor umbrella products and, thus, if they desire either of those features, then they must purchase an outdoor umbrella only from [Plaintiff]." *Id.*

Defendant's eighth counterclaim for Florida common law unfair competition relies on similar facts, claiming Plaintiff has unfairly competed with Defendant. *See id.* at 39-40. Defendant again focuses on Plaintiff's expired patents, alleging Plaintiff has "continu[e]d to market and advertise its products in interstate commerce in connection with the sale of its outdoor umbrellas

as being patented when its patents have expired . . . ." *Id.* Defendant contends this is likely to deceive purchasers and potential purchasers in the same manner as Defendant alleges in the seventh counterclaim. *See id.* at 39. Defendant further alleges Plaintiff "willfully misrepresented its expired patents as continuing to provide it exclusive rights, in interstate commerce in connection with outdoor umbrella products, and knew or should have known[] that their conduct was unlawful and would damage [Defendant]." *Id.* at 40.

In seeking to dismiss the seventh and eighth counterclaims, Plaintiff argues Defendant fails to state claims for relief. *See* Mot. 8–10. First, Plaintiff points out that the legal analysis applicable to FDUTPA claims and claims of Florida common law unfair competition is the same analysis that applies to Lanham Act violation claims. *Id.* at 9. Second, Plaintiff relies on *Crocs v. Effervescent, Inc.*, 119 F.4th 1, 6–7 (Fed. Cir. 2024), in which the Federal Circuit held a false claim about the possession of a patent on a product feature, without more, does not give rise to a cause of action under Section 43(a)(1)(B) of the Lanham Act. *Id.* And even assuming that the use of the term "patented" is a false claim in this context, third, Plaintiff argues Defendant fails to state a false advertising claim because Defendant "point[s] to no misleading statements about the nature, characteristics, or qualities of the product features [at issue] . . . ." *Id.* at 9–10. Plaintiff also urges that Congress has abrogated liability for this type of false patent marking under 35 U.S.C. § 292(c). *See id.* at 10.

Plaintiff is correct that the legal analysis is the same for claims under the Lanham Act, FDUTPA, and Florida state common law for unfair competition. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011) ("[T]he legal standards we apply to [the FDUTPA] claim are the same as those we have applied under section 43(a) of the Lanham Act."); *Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (affirming that

16

legal analysis is the same for claims alleging violations of Lanham Act, FDUTPA, and Florida state common law for infringement and unfair competition); *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007) ("Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law."); *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."). Therefore, the Court may consider opinions analyzing false advertising claims under the Lanham Act.

However, Plaintiff sets forth no basis to preclude the seventh and eighth counterclaims. Plaintiff points to *Crocs* to suggest that the counterclaims are subject to dismissal. Mot. 9. In *Crocs*, the defendant asserted a counterclaim for false advertising in violation of the Lanham Act, alleging Crocs had "engaged in a 'campaign to mislead its customers' about the characteristics of the primary material Crocs uses to make its footwear products . . . ." *Crocs*, 119 F.4th at 2. Crocs's website allegedly falsely described the material as "patented," "proprietary," and "exclusive." *Id.* The district court granted summary judgment in favor of Crocs, but the Federal Circuit reversed. *Id.* at 2-3. The court held that "a cause of action arises from Section 43(a)(1)(B) [of the Lanham Act] where a party falsely claims that it possesses a patent on a product feature and advertises that product feature in a manner that causes consumers to be misled about the nature, characteristics, or qualities of its product." *Id.* at 2. Thus, a party may violate Section 43(a)(1)(B) of the Lanham Act by falsely claiming it holds a patent on a product feature and using that false claim to mislead consumers. *See id.*

*Crocs* is not dispositive. Plaintiff argues that Defendant has made no allegations similar to those made in *Crocs* regarding false descriptions of material as proprietary and exclusive, but the

17

Federal Circuit never imposed such a requirement, nor did the court indicate that the mere failure to allege such facts necessitates dismissal. *See generally id.*; Mot. 9. Rather, the court held merely that these facts *could* serve as the basis for such a claim. *See Crocs*, 119 F.4th at 2. And in any event, the allegation that Plaintiff falsely advertised a specific feature as "patented" when Plaintiff's patents had in fact expired, taken as true, sufficiently links the alleged misrepresentation to the nature, characteristics, or qualities of Plaintiff's products—satisfying the rule laid down in *Crocs*. *See id.*; Resp. 15-16. Accordingly, Plaintiff's reliance on *Crocs* alone is insufficient to warrant dismissal.

The Court thus turns to Plaintiff's argument that Congress has abrogated liability for the alleged type of false patent marking under 35 U.S.C. § 292(c). *See* Mot. 10. According to Plaintiff, the statute "completely exculpates [Plaintiff] of liability." *Id.* But Defendant disagrees, arguing § 292 applies to criminal or qui tam actions for physically marking products and does not preempt the false advertising claim brought here. *See* Resp. 16.

While the law prohibits false marking, only a plaintiff who has suffered a competitive injury from that false marking may bring suit. 35 U.S.C. § 292(b); *see also Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1399 (Fed. Cir. 2015) ("Section 292(b)'s 'competitive injury' standing requirement was added in 2011 by the AIA."). But despite this private right of action granted to specific individuals, § 292(c) clarifies that "[t]he marking of a product . . . with matter relating to a patent that covered that product but has expired is not a violation of [Section 292]."

However, Defendant's seventh and eighth counterclaims are not based on § 292. Rather, Defendant challenges Plaintiff's conduct under the Lanham Act, the Sherman Act, FDUTPA, and Florida common law. Plaintiff provides no sufficient basis for the Court to construe § 292(c)'s bar

18

Case No. 24-cv-24382-BLOOM/Sanchez

as applicable to all false advertising and unfair competition claims based on the alleged marking of expired patents.

At this juncture, Plaintiff has failed to satisfy its burden of demonstrating that dismissal of the seventh and eighth counterclaims is warranted.

IV. **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion to Dismiss Defendant's Counterclaims, **ECF No. [27]**, is **GRANTED in part and DENIED in part**.

2. Defendant's First, Second, Third, Fifth, and Sixth Counterclaims are **DISMISSED**.

3. Plaintiff shall file its Answer to Defendant's Fourth, Seventh, and Eighth Counterclaims by **February 2, 2026**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 20, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record